**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **BARRY ARMSTRONG,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | **CASE NO. 06-CV-677-FHM** |
| **MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,**[1] | ) | |
| **DEFENDANT.** | ) | |

**ORDER**

Plaintiff, Barry Armstrong, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's May 4, 2004 and June 20, 2004 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held April 19, 2006. By decision dated June 30, 2006, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on November 28, 2006. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 43 years old at the time of the ALJ's decision. [R. 372, 373]. He claims to have been unable to work since December 17, 2001, due to transient ischemic attacks, angina, diabetes, depression and numbness, decreased sensation and decreased range of motion of the dominant right hand. [Plaintiff's Brief, p. 1]. The ALJ determined that Plaintiff has severe impairments consisting of bilateral arm and hand pain, fatigue, numbness, transient ischemic attacks and diabetes mellitus [R. 20], but that he retains the residual functional capacity (RFC) to perform medium work activity. [R. 20]. Based upon the testimony of a vocational expert (VE), the ALJ found Plaintiff could return to his past relevant work as an aircraft mechanic and lathe operator. [R. 24]. As an alternative finding, the ALJ determined that there were other jobs in the economy in significant numbers that Plaintiff could perform with that RFC. [R.25]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 26]. The case was thus decided at step four with an alternative finding at five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing

the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ failed: 1) to perform a proper determination at steps two and three of the sequential evaluation process; 2) to give proper consideration to the opinions of Plaintiff's physician's assistant and vocational rehabilitation specialist; 3) to perform a proper credibility determination; and 4) to perform a proper determination at steps four and five of the sequential evaluation process. For the reasons discussed below, the Court reverses and remands the decision to the Commissioner for reconsideration.

**Medical Evidence**

Plaintiff claims he became disabled on December 17, 2001, when he had a stroke. [R. 71, 81, 411, 419]. The only medical evidence in the administrative record from December 17, 2001, consists of Hillcrest Medical Center Emergency Room records indicating Plaintiff was admitted for complaints of left sided weakness and a Carotid Duplex Imaging report which shows mild plaquing in both carotid systems. [R. 197 (2 pages), 196, 201-210]. Treatment records two weeks later from Morton Comprehensive Health Services, Inc., reveal that all the lab studies conducted by Hillcrest on December 17, 2001, including a CT of the head, were normal and that Plaintiff was discharged from the hospital with a prescription for slightly elevated cholesterol. [R. 213]. According to the January 2, 2002 examination report by Lijun Wan, M.D., Plaintiff was advised to quit smoking, lose weight and decrease caffeine intake. [R. 214]. On January 18, 2002, Dr. Wan assessed

TIA,[3] COPD,[4] Obesity and Migraine. [R. 212]. He again urged Plaintiff to decrease caffeine, lose weight and quit smoking and started Plaintiff on a Plavix assistance program.[5] A chest x-ray that same date indicated Plaintiff's heart size is borderline, pulmonary vascularity is unremarkable and mild pleural thickening involving apices and upper lungs laterally on both sides is probably chronic. The radiologist concluded there was no acute radiographic abnormality. [R. 215].

While constructing an aluminum storage building in his yard on April 13, 2003, Plaintiff suffered complex lacerations to the right palm with distal near degloving and lacerations of the left wrist and upper arm. [R. 409]. Surgery was performed April 14, 2003. [R. 217-18, 246]. Plaintiff was followed postoperatively by the surgeon, Brent C. Nossaman, D.O. [R. 245-246].

On April 26, 2003, Plaintiff was admitted to St. John Medical Center for suspected acute myocardial infarction. [R. 228-243]. He was discharged on April 29, 2003, after coronary angioplasty and stent placement to the right coronary artery. [R. 226-227]. He was also diagnosed with hyperglycemia (high blood sugar), hypertriglyceridemia (an excess of glycerides in the blood), new onset diabetes mellitus and hypertension. [R. 219-225].

---

[3] A transient ischemic attack is a neurologic abnormality of sudden onset and short duration that reflects dysfunction in the arteries supplying the brain with blood causing symptoms similar to a stroke. *The Merck Manual of Diagnosis and Therapy*, 17th ed. (1999)1420-21.

[4] Chronic Obstructive Pulmonary Disease *See Dorland's Ill. Med. Dictionary*, 28th ed. (1994) 375.

[5] Plavix is indicated for the reduction of atherothrombotic events such as recent MI, recent stroke or established Peripheral Arterial Disease. *Physicians' Desk Reference* (PDR) 62nd ed. (2008) 2878.

Upon referral from Dr. Nossaman, Plaintiff commenced physical therapy on May 1, 2003, for right hand numbness and a marked degree of loss of motion, stiffness, swelling, weakness and loss of function in his right hand. [R. 274-276]. On May 8, 2003, Dr. Nossaman removed Plaintiff's stitches, noted all incisions were healing normally and advised Plaintiff to continue range of motion exercises and therapy. [R. 245]. Physical therapy treatment notes from May 8, May 22 and May 29, 2003, reflect Plaintiff's condition improved and on June 10, 2003, when Plaintiff was discharged from therapy, his range of motion was noted to be increased. [R. 264-283].

On May 8, 2003, Plaintiff was established for cardiac and diabetes follow-up care at the Indian Health Clinic. [R. 349-350]. On August 18, 2003, Plaintiff complained of chest pain and upper extremity numbness to Claude Denize, PA-C, a physician assistant.[6] [R. 343]. He also had subjective complaints of upper extremity dysesthesia.[7] He was prescribed Pamelor.[8] At his check-up on August 25, 2003, a prescription for Vicodin[9] was added. [R. 341-342].

Plaintiff was examined by Moses A. Owoso, M.D., on behalf of the Social Security Administration on September 4, 2003. [R. 277-283]. Dr. Owoso noted healed surgical

---

[6] Most of the treatment records from Indian Health Clinic were signed by Claude Denize, PA-C, as the medical care provider. [R. 330-332, 334-338, 340, 342, 343, 350].

[7] Dysesthesia is a distortion of any sense, especially of that of touch; an unpleasant abnormal sensation produced by normal stimuli. *Dorlands*, 28th ed. 515.

[8] Pamelor (nortriptyline HCI) is indicated for the relief of symptoms of depression. *PDR*, 53rd ed. 2070.

[9] Vicodin is a semisynthetic narcotic analgesic and antitussive indicated for the relief of moderate to moderately severe pain. *PDR Online:* 0040-7305, Database updated May 2007, Vicodin ES Tablets (Abbott).

scars on the anterior left wrist and on the right palm, compatible with the repair of degloved injury of the palm. He observed no peripheral edema, cynosis or clubbing or restrictive contractures in either hand and normal color and dexterity with slightly slow fine movement in the right hand. Plaintiff was able to button and unbutton his shirt effectively, though slowly, and he was able to oppose his thumb to all digits in both hands. Dr. Owoso recorded complaints of pain on full range of the digits in the right hand but no demonstrable tendon deficit. Tinnel and Phalen signs were negative, strength in all muscle groups of the extremities were 5/5 bilaterally, tone was normal and grip was functional bilaterally. Dr. Owoso's clinical impressions were: history of coronary artery disease (CAD), post stent placement 4 months previously, essentially stable; hypertension, controlled on medication; diabetes, on medication; and old wounds, both hands, completely healed. [R. 279].

A Functional Capacity Assessment form filled out by a non-examining agency physician on September 12, 2003, indicates Plaintiff is able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk and sit with normal breaks a total of about 6 hours in an 8-hour workday and unlimited push and/or pull including operation of hand and/or foot controls. [R. 284-291].

At the Indian Health Clinic on September 19, 2003, Plaintiff complained of dysesthesia in the upper extremity palmar/digit and of frustration and anxiety due to constant hand discomfort. [R. 339-340]. Claude Denize, PA-C, diagnosed depression and prescribed Effexor XR.[10] On October 3, 2003, Plaintiff's Effexor, Vicodin, Plavix and Pamelor prescriptions were refilled. [R. 337]. The next treatment record is dated January

---

[10] Effexor XR is an antidepressant. *PDR Online* 9040-2325, Database updated May 2007, Effexor XR Capsules (Wyeth).

30, 2004. [R. 336]. On that date, Plaintiff was seen for right upper extremity dysesthesias, CAD, depression and diabetes mellitus type 2 under poor control. His prescriptions were refilled. *Id.* Plaintiff had the same complaints three months later on March 10, 2004, his prescriptions were again refilled and Zocor was added for cholesterol control. *Id.*

On June 3, 2004, Plaintiff was seen at St. John Medical Center by Ronald Saizow, M.D., for sudden onset headache and left-sided weakness and numbness. [R. 295-297]. Plaintiff gave a history of CVA (cerebrovascular accident) with left-sided weakness which lasted three days pre-2001; coronary artery disease with non-ST elevation MI status post stent placement in right coronary artery April 26, 2003; bilateral hand surgeries secondary to trauma with right ulnar nerve damage April 13, 2004;[11] smoking, hyperlipidemia and questionable hypertriglyceridemia. [R. 295]. Dr. Saizow noted Plaintiff's failure to take his medication for five months because he could not afford it. [R. 295]. Examination of the extremities revealed a right hand surgical scar with stiffness and decreased sensation to temperature but normal sensation to pressure and touch and pain bilaterally. [R. 296]. Dr. Saizow noted Plaintiff's inability to squeeze his hand secondary to ulnar nerve injury. [R. 297]. On June 4, 2004, Dr. Saizow reported the TIA was likely caused by Plaintiff's noncompliance with medication and he was discharged as clinically stable. [R. 292-294]. His noncompliance was addressed and social services was consulted for help with medicines. [R. 293].

Plaintiff's medications were refilled at the Indian Health Clinic on July 12, 2004. [R. 334]. On July 29, 2004, Claude Denize, PA-C, wrote a letter on Plaintiff's behalf, stating:

---

[11] The correct date of Plaintiff's bilateral hand surgery is April 14, 2003.

> Barry Armstrong has had 2 CVA's, one occurring within the last month. He is currently receiving care and treatment through Indian Health care and George Cohlmia, M.D., Cardiovascular Specialist. Due to his medical condition, Mr. Armstrong has unable to work since 2001. [sic]

[R. 371].

The record contains a report by Steven Y.M. Lee, M.D., an Internist for the DDU. [R. 301-307]. Dr. Lee examined Plaintiff on August 27, 2004, and recorded his chief complaint as: " 1. He cannot meet department of labor requirements to work. 2. His doctor has not released him to return to work." [R. 301]. Physical examination revealed all fingers and thumb on Plaintiff's right hand were in a position of function; hyperextension of the proximal phalanx of the right hand appeared to cause pain; the middle phalanx of the right middle and ring fingers could not be fully extended because of pain; the right thumb and little finger were able to move normally without pain and by palpation, there was no definite evidence of tenderness of the right hand. [R. 301-302]. Examination of the left hand was essentially negative except for stiffness of the middle phalanx. [R. 302]. Sensory testing revealed inconsistent reactions to pin pricks in the right hand. Intrinsic muscle function of the right hand appeared to be intact. Handgrip strength on the left was 5+/5+. Plaintiff did not attempt to grip with the right hand. He was able to put on and remove his glasses with the right hand and was able to fold his pants cuffs up with both hands. Muscle strength of the forearms, arms, legs and feet was 5+/5+. Intrinsic muscle function of the hands was normal and he was able to manipulate small objects and handle tools with either hand. *Id.* Dr. Lee repeated Plaintiff's chief complaints as his diagnoses and as a medical assessment, he stated:

> This 41-year-old tall and moderately obese white male is unable to work because he does not meet the department of labor requirements to work. He gave a history of doing lawn care. Examination revealed stiffness and pain of the joints involving the right hand.

[R. 302]. Range of motion tests conducted by Dr. Lee reflected diminished flexion of left and right knee, left and right elbow, left middle finger and three fingers of the right hand. [R. 305].

An RFC Assessment form completed by a non-examining agency physician dated September 16, 2004, appears in the record. [R. 308-315]. Plaintiff's CAD, stent placement, diabetes, obesity, and decreased range of motion in the right hand with pain were noted. [R. 309]. Nonetheless, an RFC for medium work activities was assessed, again with no limitations in the operation of hand and/or foot controls. [R. 309].

On October 29, 2004, Plaintiff returned to the Indian Health Clinic for prescription refills. [R. 333]. He reported occasional chest pain but that he had not been rechecked by a cardiologist. Among the subjective complaints recorded is the following: "(R) hand in splint [due to] injuries from degloving accident can't get much movement (R) hand except thumb unable to use computer keyboard." *Id.*

Included in the record is a Psychiatric Review Technique form signed by Janice B. Smith, Ph.D., an agency psychologist.[12] [R. 316-320]. No functional limitations were noted under the "B" Criteria of the Listings except for mild difficulties in maintaining social

---

[12] If a determination is made that a claimant has a medically determinable mental impairment, the pertinent findings and conclusions used to complete a PRT form, which was previously required by the regulations in evaluating the severity of the mental impairment, must appear in the body of the decision. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746; 50, 757 (Aug. 12, 2000); 20 C.F.R. § 404.1520a.

functioning. [R. 326]. Dr. Smith found no medically determinable mental impairment was established.

Wade Walters, a vocational rehabilitation counselor for the Muscogee (Creek) Nation wrote a letter on January 26, 2005, stating he had only one meeting with Plaintiff during which he explained to Plaintiff that the agency could not assist in training "not compatible with his disability." [R. 370]. He said: "In the meeting he and I had, it was in my professional opinion Mr. Armstrong was one of the few people I have met whom should be on SSI or SSDI due to the number of disabilities and the severity of the disabilities." *Id.*

Plaintiff appeared at the Indian Health Clinic on June 29, 2005, for diabetes check-up. [R. 332]. He reported he had taken no medications for three months and that he had depressed mood due to chronic pain. He was diagnosed with situational depression and his medications were refilled. *Id.* He returned on July 1, 2005. [R. 331]. No depression was reported and his medications were refilled. *Id.*

The record contains an RFC Questionnaire dated October 3, 2005, and signed by Claude Denize, PA-C ("Dr. Claude"). [R. 359-362]. The diagnoses listed were: Diabetes Type (2); Dyslipidemia; Coronary Heart Disease, S/P LVA and Chronic Upper Extremity Dysesthegia." [R. 359]. Pain was characterized as "throbbing" and left sided paresthesia was identified as the positive objective sign. "Currently feeling depressed" was noted to be an emotional factor contributing to the symptoms and functional limitations and "often" was circled with respect to the occurrence of symptoms severe enough to interfere with attention and concentration. [R. 360]. His prognosis was noted to be "fair." The remainder of the form, where specific functional limitations were to be indicated, was left blank with only the notation "see Dr. Lee's records" written in the margins. [R. 360-362].

Treatment records from the Indian Health Clinic that same date indicate Plaintiff was seen for diabetes recheck. [R. 330]. He complained of upper and lower extremity dysesthesia, of increased pain and numbness in the upper extremities and of sadness due to inability to work. *Id.* "Major Depression" was included in the list of diagnoses and Prozac was prescribed. *Id.*

Claude Denize again wrote a letter on Plaintiff's behalf on September 1, 2006, stating Plaintiff's "primary indication" is related to his bilateral hand lacerations, that his ability to use his hands is permanently limited and that he "remains unable to work or return to work and is advised to continue with application through Social Security for a permanent disability." [R. 397].

**The ALJ's Decision**

The ALJ found Plaintiff has severe impairments of bilateral arm and hand pain, fatigue, numbness, transient ischemic attacks and diabetes mellitus. [R. 20]. He concluded none of those impairments, individually or in combination, meet or medically equal a listed impairment. [R. 20]. He assessed Plaintiff's RFC as able to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday and push and/or pull on an unlimited basis. [R. 20-21]. He found Plaintiff's statements concerning the intensity, duration and limiting effects of his symptoms were not entirely credible. [R. 21].

In his summarization of the medical record, the ALJ acknowledged the opinion evidence of Claude Denize, PA-C and Wade Walters, vocational rehabilitation counselor. [R. 21]. With regard to Claude Denize's opinion, the ALJ stated:

> Controlling weight cannot be given to the physician assistant's opinion, because, as previously noted, he is not an acceptable source. Although he does note in his report that the claimant has "received care and treatment" from George Cohlmia, M.D., this specific report is not from Dr. Cohlmia. Also, this brief statement is not consistent with the other substantial evidence in the case record (Social Security Ruling 96-2p).

[R. 23]. The ALJ added that the determination that a claimant is "disabled" or "unable to work" is an issue reserved to the Commissioner and that such statements are not entitled to controlling weight but must be considered. [R. 23].

The ALJ noted that Plaintiff's "conditions have remained stable" when he took his medications as prescribed and that Plaintiff testified he takes no medication "by his own choice." [R. 24]. He said:

> The Administrative Law Judge further finds that the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or that he even has limitations greater than those determined in this decision.

[R. 24].

With regard to Plaintiff's claimed limited daily activities, the ALJ commented that it was difficult to attribute that degree of limitation to Plaintiff's medical condition in view of the relatively weak medical evidence and other factors. [R. 24]. He concluded Plaintiff's description of his symptoms and limitations has generally been inconsistent and unpersuasive, without convincing details regarding precipitating factors, that his description of the severity of the pain is so extreme as to appear implausible and "the description of symptoms is unusual, and is not typical for the impairments that are documented by medical findings in this case." [R. 24].

Citing the vocational expert's testimony, the ALJ found Plaintiff could return to his past jobs as an aircraft mechanic and lathe operator as he actually performed them. [R. 24]. He also set forth an alternative step five finding regarding other jobs existing in the economy that Plaintiff could perform. [R. 25].

**Discussion**

The ALJ's decision was entered on June 30, 2006. [R. 27]. Shortly afterward, the agency published Social Security Ruling 06-3p, *Titles II and XVI: Considering Opinions and Other Evidence From Sources Who are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, 2006 WL 2329939 (S.S.A. August 9, 2006) (SSR 06-3p). This ruling clarified how the agency is to consider opinions from sources who are not "acceptable medical sources." 20 C.F.R. § 404.1513(a) (Acceptable medical sources include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists.). Evidence from "other sources" may be used to show the severity of the individual's impairment and how it affects the individual's ability to function. SSR 06-3p at *2. As stated by SSR 06-3p at *3 and the regulations, "other medical sources" include physician assistants. 20 C.F.R. 404.1513(d).

Recognizing the growth of managed health care in recent years and the increasing use of medical sources who are not technically "acceptable medical sources," the Ruling states that opinions from medical sources such as physician assistants "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-3p at *3. The Ruling explains that opinions from "other medical sources" may reflect the source's judgment about some

of the same issues addressed in medical opinions from "acceptable medical sources" including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s) and physical and mental restrictions. *Id.* at *5. It instructs the adjudicator to consider all relevant evidence in an individual's case record, including opinions from medical sources who are not "acceptable medical sources" and to explain the weight given to these opinions or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. *Id.* at *6.

The ALJ did not have the benefit of this Ruling when he wrote his decision. However, the Tenth Circuit has concluded the Ruling applies retroactively in two cases where the ALJ did not explain the weight he attached to"other source" opinions nor explain why he rejected them. *Bowman v. Astrue*, 511 F.3d 1270, 2008 WL 54149 (10th Cir. 2008) (Ruling applied retroactively because it merely clarified existing law); *Frantz v. Astrue*, 509 F.3d 1299, 2007 WL 4328794 (10th Cir. 2007) (reversal required where court cannot determine whether evidence from clinical nurse specialist (CNS) could have led to different result had the ALJ assessed it with reference to the new Ruling).

After review of the record, the ALJ's decision, the parties' briefs, SSR 06-3p and applicable case law, the Court concludes that this case must be remanded to the Commissioner to evaluate the records generated by the physician assistant with regard to treatment of Plaintiff's upper extremities. The Court agrees with the Commissioner that the ALJ appropriately discounted the physician assistant's RFC Questionnaire which was incomplete and therefore did not constitute substantial evidence. However, the ALJ

determined at step two that Plaintiff has severe impairments of bilateral arm and hand pain and numbness (presumably involving the hands), but did not set out specific exertional and/or nonexertional RFC limitations, or explain why he found no such limitations exist despite those impairments.

The treatment records from the Indian Health Clinic and Claude Denize, PA-C, reflect consistent complaints of upper extremity dysesthesia, pain, stiffness and numbness and the physician assistant expressed an opinion that Plaintiff's ability to use his hands is permanently limited. [R. 330-362, 397]. In other parts of the record, clinical findings by physicians who qualify as "acceptable medical sources" range from completely healed hands [R. 279] to stiffness, decreased sensation to temperature and inability to squeeze with the right hand [R. 297] to stiffness and pain of the joints involving the right hand and decreased flexion of the left middle finger and three fingers of the right hand [R. 305]. The evidence from the physician assistant and these other acceptable medical sources conflicts with the RFC findings recorded by the agency consultant [R. 309] whose opinion, it appears, was adopted by the ALJ since he assigned unlimited push and/or pull activities in his decision. [R. 20]. Because the ALJ failed to indicate what evidence he relied upon in making his RFC determination and failed to explain how he considered and resolved the medical evidence in the record that was inconsistent with his assessment, the Court finds this case must be remanded for reconsideration of the medical evidence, including the treatment records from the physician assistant. *See Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (court cannot meaningfully review ALJ's determination absent findings explaining weight assigned to medical opinions).

The ALJ's decision indicates he considered the "other source" opinion of the vocational rehabilitation specialist. [R. 23]. He gave legitimate reasons for rejecting the specialist's opinion that Plaintiff should be on disability and those reasons are borne out by the record. The Court finds no error on the part of the ALJ in evaluating this evidence.

**Mental Impairment**

Plaintiff contends the ALJ ignored the possibility of a mental impairment despite medical evidence that Plaintiff was diagnosed and treated for major depression and that he failed to apply the special technique required in evaluating mental impairments. [Plaintiff's Opening Brief, Dkt. 12, p. 2]. Defendant acknowledges that the diagnosis of depression appears in the record but argues that no treatment, other than prescription of medication, was required, that the record shows Plaintiff's ability to work was not significantly limited by depression and that Plaintiff failed to establish the existence of a severe mental impairment at step two. [Defendant's brief, p. 3].

In this case, the diagnosis of depression and prescription for antidepressants appear only in the physician assistant's records. [R. 332, 336, 337, 340]. One notation apparently entered by a nurse at the Indian Health Clinic indicates Plaintiff was to be referred to "Behavioral Health psychotherapy for depression and pain" [R. 339] but there is no evidence that this was ever done. The agency psychologist, an acceptable medical source who reviewed the record, concluded a medically determinable mental impairment did not exist. [R. 316].

According to SSR 06-3p, only "acceptable medical sources" can provide evidence to establish the existence of a medically determinable impairment. See also 20 C.F.R. § 404.1527(a)(2); *Bowman*, 511 F.3d at 1275 (quoting SSR 06-03p, 2006 WL

2329939 at *2 ("[i]nformation from ... 'other [medical] sources' cannot establish the existence of a medically determinable impairment.")). Thus, the only opinion in the record from an "acceptable medical source" with regard to Plaintiff's alleged mental impairment is that Plaintiff does not have a medically determinable mental impairment.

Furthermore, Plaintiff did not list depression as an impairment that affects his ability to work in his application materials nor did he mention such an impairment during the hearing. Based upon the record before it, the Court finds Plaintiff failed to establish the existence of a medically determinable mental impairment at step two. *See Eacret v. Barnhart*, 120 Fed.Appx. 264, 2005 WL 40061 (10th Cir. 2005) (unpublished) (finding no error in ALJ's determination that claimant did not suffer from a severe mental impairment where there was no objective medical evidence which verified depression, there was no diagnosis of major depression and claimant did not receive mental health therapy, even though psychotropic medication had been prescribed). See 20 C.F.R. § 404.1520(c) (claimant bears the burden to demonstrate an impairment or combination of impairments that significantly limits his ability to do basic work activities).

**Conclusion**

The Court finds the treatment records of the physician assistant are entitled to consideration under SSR 06-3p and the regulations as "other medical source" evidence and that the ALJ must explain the weight he accorded that evidence and the other conflicting medical evidence in making his determination. In addition, inconsistencies between the ALJ's step two findings with regard to Plaintiff's severe impairments and his RFC assessment require resolution. Because the findings at subsequent steps in the evaluative sequence may be impacted after reconsideration of the medical evidence,

the Court does not address Plaintiff's allegations of error at steps four and five in this case.

The decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration consistent with this Order. In remanding this case, the Court does not suggest that the record is incomplete, nor dictate any result, but does so simply to assure that the correct legal standards are invoked in reaching a decision based on the facts of this case. *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

SO ORDERED this 20th day of February, 2008.

Frank H. McCarthy

**FRANK H. McCARTHY**
**UNITED STATES MAGISTRATE JUDGE**